Good morning, Your Honor. May it please the Court, Anthony Colombo on behalf of the defendant, Appellant Martin Perez. The issue before the Court today is a very narrow one, and that is where the probable cause developed subsequent to an illegal detention in and of itself attenuates the taint between the illegal detention and the statements that were obtained after the illegal detention occurred. The answer to that question is a simple no. And what Mr. Perez is asking this Court to do is to hold that probable cause in and of itself does not attenuate the taint between an illegal detention and the statements that were made after the illegal detention occurred. Now, in this case, the government concedes that Mr. Perez was illegally detained at the border. The government concedes that in order to detain Mr. Perez in a non-reasonable manner by the use of handcuffs, reasonable suspicion is required. And in this case, the government has conceded that an illegal detention did occur. So the question in this case is whether the statements that Mr. Perez made after the illegal detention and after probable cause was developed flowed from the illegal detention. Now, the Supreme Court in Wong Song established what's called the exclusionary rule. And in that ruling in Wong Song, the Supreme Court determined that fruits of an illegal government action can be suppressed or subject to suppression. In Brown, Brown held that the attenuation, that there was an attenuation analysis that must be conducted in order for the Court to determine that fruits of an illegal detention or arrest, such as statements, can be subject to suppression. Now, in that attenuation analysis, there are three parts to it. The first is the temporal proximity between the illegal detention and the arrest or the illegal detention and the statements that occurred after that. The second is the intervening circumstances that occurred between the illegal detention or the illegal government action and the statements that occurred. And the third is the flagrancy of the police misconduct. Now, what happened in this case at the district court level is that Judge Gonzalez held that there was an intervening circumstance, and that was the development of probable cause after Mr. Perez had been detained, illegally detained, but before he made any statements. And also the seven hours. It was also the seven hours before he made the statement. That's correct, Your Honor. And in Brown, the Court said that six hours was not enough to attenuate the taint. So we'll drop the bright-line rule. It's seven hours is, six hours isn't? No, I don't think there is a bright-line rule. That's the point, is that there is not one talismanic test that can be applied. It's a totality of the circumstances which must be taken into account, determining the temporal proximity, the intervening circumstance, and then the flagrancy of the police misconduct. Now, in this case, what the Supreme – what Judge Gonzalez did was she determined that probable cause in and of itself is a cure-all, is one talismanic test that attenuates the taint. But why would it have – why would it have to be that? I mean, why in Mr. Perez's mind – if Mr. Perez gets handcuffed, walks up, and is – they're about to take him up there and put him down, and all of a sudden he confesses, then you've got your temporal proximity, there's no intervening circumstances, and the government's conceded that the detention is illegal. But in this case, he's taken up – he's only handcuffed for a couple of minutes because they're shorthanded. They take him up there, they take the handcuffs off, they tell him he's not under arrest. Seven hours later, after he knows that they have gone through his car and found marijuana in it, at that point, why is Mr. Perez intimidated by the fact that he was in handcuffs for two minutes and not by the fact that in the intervening seven hours that they've gone through his car with a fine-tooth comb and found marijuana in it? Your Honor, I would agree that the ultimate resolution to this case may be that in applying the attenuation analysis that the statements were – that there was no taint from the illegal – from the initial illegal government action. What I'm asking this Court to determine and what the issue is here is whether probable cause developed subsequent to that illegal detention automatically attenuates the taint, that it is a one cure-all. But why would we – why would we – why would you want to ask us to adopt such a broad rule? Well, it's – it's – Why would it be in our – why would it be good for the Court, usually when we develop sort of a totality of the circumstances test in these Fourth Amendment search cases, to develop such a broad rule that we'd say that any time there's probable cause, it automatically covers all cases? Well, no. Your Honor, what – maybe I wasn't clear. The Supreme Court has determined what is an intervening circumstance, and it – and it has determined that an intervening circumstance is something that would allow or would demonstrate that the defendant has – it was the defendant's own free will or an exercise of his own free will to make those statements. Now, an intervening circumstance has been defined as an appearance before a magistrate court, discussions with an attorney, or subsequent release from custody. Now, in this case, what – You're worried about the footnote, too, in Nava. Is that what you're concerned about? Well, that's – that's one of the concerns. The concern here today is – is the district court saying that probable cause in and of itself is an intervening circumstance, and therefore, the other issues as far as the temporal proximity, the flagrancy of police misconduct don't apply. And this is – this is exactly what happened in Brown. In that case, the – the district court determined that the advisement of Miranda was a cure-all, that it – the advisement of Miranda is what cured any illegal – initial illegal government misconduct. And that's what the district court in this case did. What I'm asking the Court to hold is that there is more to the argument, or there is more to be examined, which the district court did not do in this case, and that is look at the temporal proximity, look at the other intervening circumstances, which Your Honor did discuss, and look at the flagrancy of police misconduct. And that's not something that – that was conducted in this – in this case. And I think in order for the – the issue to be resolved, it would have to be remanded to the district court, and the district court – Can you show me where the district court said that probable cause would – you've characterized this as a very absolute ruling by the district court, and I don't – I don't see that as I look at the district court's oral opinion here. But, Your Honor, it is in there. I do not – Well, I'm looking at pages 149 and 150 of the record. And it looks to me that the district court said probable cause in this case, and that would be very different from what you've always, and in all cases, be a sufficient intervening cause. And I didn't – I didn't see that the district court's opinion was so – was so broad. No. I don't – I don't believe that the district court said in every single case that that's it. But the district court just – just took into account that one fact. Okay. Well, then maybe – maybe you ought to redirect your argument to us in terms of why the probable cause in this case wasn't a sufficient intervening cause. Well, Your Honor – Why would seven hours have passed since a two-minute temporary detention? The illegal government's made a mistake. Your client may have a 1983 action against the – against the border patrolman for – for his temporary detention. But we've got seven hours that have intervened since that two-minute incident. He's been told he's not under arrest. He's free to move about the room while his car is being – while his car is being inspected. And he's got to be sweating. If he knows – if he knows the marijuana's there, he's – he's got to be – he's got to be nervous about this. And hours later, they come back and say, well, all right, we're going to give you your Miranda rights. And now we want to know – we want to know what's going on. Well, Your Honor, he – my – my client was 19 years old. He had never had any prior law enforcement contacts. He was at the border. It was in a pre-primary area. And without any – any explanation, he was ordered out of the car and handcuffed. Now, I would agree, and the record is clear, that it was only for several minutes, and he was taken to a security office, and the handcuffs were removed, and he was detained in the security office and then taken to a cell. I think for a young man with no prior law enforcement contact, that is something that would allow the government to gain a psychological advantage over him later on when they interrogated him. And I think that is something that would go into the analysis. But that's not something that the Court in this case, I believe, considered. I don't believe that it considered because I believe the Court's ruling was given that – and I believe that the government argued this – that there was not – the illegal detention, it doesn't really matter that it even occurred because probable cause was developed. So, therefore, there could have been nothing that – Kennedy. Why don't you do this? Why don't you – because you're about out of time. See if you can find the specific part of the transcript that you say concerns you, and that will help us focus. Thank you. Good morning, Your Honors. Jill Burkhart on behalf of the United States. May it please the Court. Mr. Perez's spontaneous volunteered statements were not obtained through the exploitation of his brief handcuffing at the port of entry. The evidence did not flow from that handcuffing. It was not fruit of the poisonous tree. It was not subject to suppression. The members of this panel have already pointed out that there was a seven-hour time lapse in between that brief detention, but I would fill in a few more details to highlight some things. The – Why don't you help us sharpen the focus of the argument? Does the government contention that the probable cause makes irrelevant the initial handcuffing? Your Honor, the government's position is that no evidence – Yes or no? In this case, yes. In this case, under these facts, the development of probable cause meant it was irrelevant. But that's one of many reasons – Irrelevant in what sense? In the sense that there was intervening probable cause, there was – it attenuated – there was no taint. It was completely attenuated. So it's an attenuation analysis – It's an attenuation analysis, and the intervening probable cause is a powerful factor to consider in that analysis. Absolutely, if you get to that analysis. And of course, it's the government's position that you don't get to that analysis. Why is that? Because there was no evidence that flowed from the alleged unlawful activity. Well, how do we know that? How do – the counsel just made the argument as to how that could have tainted and lingered even beyond – even through the probable cause. Well, Your Honor, the issue is whether the arrest was lawful, whether he was lawfully under arrest at the time that the statements were made. And what I wanted to highlight – But you conceded that the detention was not. Well, I want to clarify what the government has conceded and what the government has not conceded. The government has conceded that the handcuffing required reasonable suspicion, and that the government did not put in evidence of reasonable suspicion. Therefore, we have to assume there was no reasonable suspicion. Right, we must. Therefore, it is not a lawful detention. Therefore, the handcuffing itself was not supported by reasonable suspicion as required. However, the fact that the inspectors had this defendant in custody was clearly lawful. They had every right to detain him while the search of the vehicle was conducted. That cannot be disputed, and I don't believe it is disputed. Right. So they had control of his body. The only part of this – and it needs to be isolated, just as it was isolated in Nava, just as it was isolated in Bravo – is the handcuffing itself. Okay, let's suppose then, under your analysis, he was lawfully detained but unlawfully handcuffed. Yes. He comes out, before they find anything in the truck, just before, he comes out and he blurts out, you're going to find marijuana there. Okay. Then that would flow from the handcuffing. Okay, now let's suppose that they have just found the marijuana and he – we add a minute to the scenario and he blurts out a confession about the marijuana. What's the relevance at that point, under your theory, of the handcuff? The – Nothing? And it drops out now because they've found the marijuana already? It drops out now. So you don't – we don't even – there's no attenuation analysis at all? Exactly. And you're – what was the – what's your authority for that? Well, that would be analogous to the Harris case. Where they had probable cause to arrest. They had probable cause. They had probable cause to arrest. Right. And what was unlawful was the manner in which they gained custody of the person. Well – They went into his house, when they aren't allowed to go into his house, to gain custody of him, but they were within their rights to have custody. And what they said was, well, what flowed from the fact that they were in that house? What flowed from it was the evidence that was obtained in the house, and that was subject to suppression. However, they lawfully had custody of his body. They Mirandized him. They interviewed him after they removed him from the house. And his statements were legal. Well, there's been no Mirandizing in my fact scenario. It's just – all that's happened is that the marijuana has been discovered, and then he, before anything action is taken, he blurts something out, which is flowing in sequence, temporally, from the handcuffing. Well, then – And you're asking us to say that because now that the – they found the marijuana in the truck, and before they do anything to him, he blurts out a confession that we ignore, the fact that he'd been handcuffed within three minutes? Actually, I'm not asking you to say that, because I'm asking you to rule on the fact that – Well, I understand, but I'm trying to understand your theory, because I'm – I've had trouble trying to figure out where Harris fits into this under your analysis. Well, the first question is whether – applying Harris and the threshold question. The threshold question is, was the evidence obtained through the exploitation of the illegal? And we don't know that. You don't know that unless one does an analysis of whether the handcuffing had some impact on whether or not this young 19-year-old may have blurted something out as a result of this rough treatment by the border search. Your Honor, I do agree that if he were placed in handcuffs and said, oh my gosh, I'm in handcuffs, I can't believe I was so stupid as to smuggle marijuana, then it would flow. And I agree that under the facts from our case, it does not flow. Whether – where the point is in between, you know, what if he blurted out before he was Mirandized, I don't know the answer to that question. But what I do know is that under the facts of this question, it did not flow, the facts of the case before us. And if I could highlight some of those facts, one of them is there was a reference – in fact, counsel said that under these facts, we don't know that they didn't gain a psychological advantage later when they interrogated him. Well, actually, the facts of this case are he was handcuffed briefly for two minutes. The handcuffs were removed. The search was conducted. That took approximately 15 minutes, according to the record. He was placed under arrest. He was advised of his Miranda rights, which he invoked. He was not questioned. Therefore, that is very clear evidence in this case that he was not psychologically affected by having handcuffs such that he was – his will was weakened. And he was going to waive his rights and confess. He invoked his rights. That invocation was respected. Do you read the district court as having gone through that analysis, or do you read the district court as having ruled that as a matter of law, because they developed probable cause, she didn't need to go through any of that analysis? I do not – I absolutely do not agree that the district court ruled as a matter of law that every time that probable cause is developed, there's nothing else to look at. The district court heard all of the arguments. She heard all of the evidence. She made a ruling. The ruling is supported by the facts and supported by the rule – by the law, rather. She made reference to the intervening – independent intervening probable cause, which was the government's theory. She didn't – but she limited it to the facts of this case. She did not make some grand ruling that – that – No, just so that I understand, in this analysis, are you saying as a matter of law or simply as a matter of fact, under the actual facts of this case, that the initial handcuffing is not – not to be considered at all? When you have said it was irrelevant, that could mean that you think in the attenuation analysis, it could have had no impact because there are all these other events, as you've just laid out. Or is it your position, invoking Harris, that as a matter of law, even though there was a constitutional violation at the outset, the intervening probable cause erases that as a matter of law? It is my position that, as a matter of the facts and the law, I don't think that Harris said that handcuffing is always irrelevant. Handcuffing can be relevant. My point is it's a two-tiered analysis. First, you start with the threshold question. Did any evidence subject to suppression flow from the allegedly illegal act? It's my position that under these facts, the evidence which is thought to be suppressed, which is this statement, did not flow from that evidence. I'm not saying that there's not going to be some factors, some factual issues that weigh in on both parts of the analysis. You can look at things like the fact that he was Mirandized and invoked. That's going to be a question that comes into both parts of the analysis. But you may, in some cases, and I maintain in this case, cut off the analysis after that threshold question, and you don't get to the three-part attenuation analysis. But in this case, whether you stop your analysis at the end of the threshold or whether you stop your analysis after the three-tiered analysis, the result is the same. Okay. Thank you. Briefly, Your Honor, I would be happy to submit a 28-J letter with my concern of the district court ruling. But the point is that there's nothing in the record concerning the invocation of Mr. Perez or that the statements were spontaneous. The point is that the district court didn't even get to that analysis. So there is nothing in the record as to what happened or whether the statements were spontaneous or not. So I don't believe... Well, did Mr. Perez invoke his Miranda rights? Well, that's what the government... The only way that that is within the record before the court is that in the government's brief, that's what they allege. And I would agree that he did invoke his Miranda rights. And the statements that we sought to suppress were alleged spontaneous statements after the invocation. And how many hours after he invoked his Miranda rights? It was probably a total of seven hours or so. So he invokes his Miranda rights, and nobody asked him any questions at that point? No. What happened was when he was being transported to the MCC San Diego... He wants to know how long he's going to have to serve. And then the officer said, well, you can judge by your brother and your father, who the officer knew was in custody on drug-related charges. And in my opinion, and this would have been argued before the district court had we gotten to those statements, and the district court not just said that these statements are not the product of this illegal detention, that that was... It's a Rhode Island... It's an Innis, and also Edwards Controls, and that was a statement by the police officer that was likely to incriminate or elicit an incriminating response from Mr. Perez. But none of that was before the district court at all. The only way that that came out in this was in the briefs that were filed by the government. But the district court never heard any evidence as far as what statements were made, whether there was invocation or not, because we didn't get there. Okay. I think we have your position. We don't need a 28-J letter. But if, counsel, you're going to come into this court and isolate the district court or characterize the district court's ruling in the fashion you did, then you better be prepared to back it up in court, not by a 28-J letter. Okay? I understand. Be helpful. Thank you. The case has argued to be submitted. Okay. Okay. The next case on calendar is Wallace v. San Diego. Thank you.
judges: Browning, Fisher, Bybee